**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue
Phoenix, Arizona 85004-4429

Stephen M. Bressler, State Bar No. 09032
   Direct Dial: (602) 262-5376
   Direct Fax: (602) 734-3742
   E Mail: SBressler@LRLaw.com
Stefan M. Palys, State Bar No. 024752
   Direct Dial: (602) 262-5352
   Direct Fax: (602) 734-3796
   E Mail: SPalys@lrlaw.com

Attorneys for Plaintiff The Paul Revere Life Insurance Co.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Paul Revere Life Insurance Company,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>Michael K. Kelly,<br><br>　　　　　　　　　Defendant. | No. CV07-02629-PHX-HRH<br><br>**PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff The Paul Revere Life Insurance Company submits this statement of facts in support of its motion for partial summary judgment, pursuant to LRCiv 56.1.

　　　1.　　Snell & Wilmer provided its partners, associates, and employees health insurance, dental insurance, vision insurance, life insurance, supplemental accidental death and dismemberment insurance, death benefits, short term disability insurance, and long term disability insurance. (Snell & Wilmer NALP Form, Benefits section, Exhibit A; ERISA Form 5500s, Exhibit B)

　　　2.　　Since 1981, Snell has funded the plan's disability benefit by purchasing a group long term disability (LTD) policy from Unum Life Insurance Co. of America. (Exhibit B at Snell & Wilmer Long-Term Disability Plan, Annual Return/Report of Employee Benefit Plan)

　　　3.　　The LTD policy covers three classes. Class 1 includes all partners and executive directors, Class 2 includes all associates, and Class 3 includes all other employees. (Overview of Long Term Disability Plan At Snell & Wilmer, prepared by Willis Corroon, Exhibit C, at page 1)

4. The LTD policy pays a monthly benefit to the participant or beneficiary if they meet the policy's definition of disability. (Snell & Wilmer LTD Policy, Exhibit D)

5. The monthly benefit for the partners in class 1 was 60% of their income up to $35,000. (Exhibit E, Snell & Wilmer Disability Income Proposal by Willis Corroon, Exhibit E at S&W000072)

6. The LTD policy is renewed annually and the renewal premium is based, in large part, upon the group's loss experience. (Exhibit E, at S&W000071)

7. Over the years, Snell had a poor loss experience. From 1981 to 1999, Unum paid out $11,595,178 in claims while collecting only $4,453,499 in premiums. (James Sinadinos Letter From Unum to Willis Corroon dated December 9, 1999, Exhibit F, at S&W000077)

8. Consequently, Unum was annually forced to raise its premiums during this time. Still, this did not cover the cost of the Snell claims. (February 13, 2001 letter to Unum, Exhibit G)

9. Every year, Snell looked for ways to reduce its premium increases. This included:

    a. extending the elimination period for certain classes from 90 days to 180 days (Disability Income Proposal for Snell & Wilmer, Exhibit H at page 2);

    b. removing benefit features from the policy, specifically the extended care benefit and the recovery income protection benefit (Snell & Wilmer Office Memorandum dated August 15, 1991, Exhibit I at 1-3; Exhibit F at S&W000076);

    c. changing the cost of living adjustment (Exhibit H);

    d. reducing the monthly benefit (Exhibit C at S&W000021);

    e. changing the definition of total disability for certain classes (Exhibit C at S&W000021)

    f. and changing features in the LTD policy such as an amendment that

limited the benefit period to two years for mental or nervous claims for Class 1 employees (Exhibit F at S&W000076).

10. In 1998, Snell had a 40% increase in its premium for the LTD policy. (Exhibit E at S&W000071)

11. Snell faced another 15% increase in its premium in 1999. (Exhibit H at S&W000031)

12. Snell instructed its insurance broker to negotiate with Unum and find ways to contain Snell's premiums. (Exhibits H and K)

13. Snell began to look for ways to reduce "the benefits to help offset the extent of the increase in rates and decrease Unum's 'exposure'." (Exhibit G)

14. Snell wanted to "[s]tabilize [the] cost of [the] benefit plan." (Exhibit C at S&W000022)

15. Snell decided to contain its LTD premiums by transferring "a large portion of the risk on [the] plan covering the Class I group (Partners) . . . to individual policies." (Exhibit G)

16. Snell and its broker negotiated with Unum and the Paul Revere Life Insurance Company to develop what is called a "reverse combo" plan. (Unum Summary Offer Form Renewal, Exhibit L at PRLRS00120)

17. Snell considered the IDI and LTD coverages under the "reverse combo" plan as "integrated." Under the "reverse combo" plan, the IDI policies provided a monthly benefit of up to $7,500. (Exhibit K)

18. The first $7,500 of monthly benefit for the partners in class 1 was transferred from the group LTD policy to individual disability income (IDI) insurance policies with Unum's sister company, The Paul Revere Life Insurance Co. The $7,500 IDI benefit was paid first – and was a dollar for dollar offset against the LTD benefit (which paid up to $35,000 depending on the income of the partner). (Exhibits K, L and July 27 letter Exhibit M)

19. Snell and its broker negotiated a 35% discount off the IDI premium that



would otherwise be available in the open market. (Exhibits K and L)

20. As a condition of purchase from Paul Revere, Snell guaranteed that 100% of its class 1 partners would participate. The class 1 partners did not have any choice in the insurance company or the details of the insurance policy. "If the required participation [was] not achieved, the [Paul Revere] offer [became] void after the initial enrollment." (Exhibit J at S&W000025)

21. Snell negotiated and purchased these policies on behalf of the class 1 partners. The class 1 partners were not involved. It also handled the enrollment and payments for its partners. (Exhibit K and N, at S&W000047)

22. Snell debited the class 1 partners for the contribution. (Mike Marrie e-mail to Tom Gibson dated April 21, 1999, Exhibit N, at S&W000048)

23. Snell paid the premium for the firm's executive director, who was a class 1 participant. (Exhibit N at S&W000049)

24. Snell's executive director announced the change to individual disability policies in an April 2, 1999 memorandum to the partners:

> We have experienced significant increases in the rates for the group LTD coverage with UNUM Life Insurance Company (UNUM) over the past four years. All indications are these increasing costs will continue into the future. We have completed an extensive review of alternative plans and the UNUM policy is superior in benefits to any other available in the market. Effective April 1, 1999, the LTD coverage will be a combination of an individual policy through Paul Revere Life Insurance Company (Paul Revere) and the group coverage through UNUM. The individual coverage is being purchased to assist in stabilizing the costs relating to this benefit.

(Exhibit K)

25. In a later memorandum, a Snell partner described the action as splitting the LTD Plan into two pieces:

> As you will recall, in 1999 we split our LTD Plan into two pieces. We have an individual policy for each partner (excluding a few partners with insurability problems) that provides a base level of benefits of $7,500 per month. We also have the group policy.

(Snell & Wilmer Office Memorandum dated February 29, 2000, Exhibit O)

26. By January 2002, Snell's broker advised that this change led to improved claims experience. The broker planned to use the improved loss experience to negotiate a



lower premium with Unum:

> The plan design modifications in prior years and transferring part of the liability under this contract to individual policies for the Partners in 1999 have contributed to the improved claims experience. Consequently the premium amounts established based on prior year's claim experience are in need of adjustment.

(Tom Gibson letter to Jacob Brown dated January 7, 2002, Exhibit P)

27. Snell received consideration for its IDI policy because it achieved savings in its welfare benefit program. (*Id.*)

28. Michael Kelly was a partner at Snell and a participant in its employee benefit plan. (Michael Kelly LTD Claim, Exhibit Q; Michael Kelly IDI Claim, Exhibit R)

29. He first enrolled in the group LTD coverage in April, 1994. (Michael Kelly Income Protection Claim, Exhibit Q)

30. Kelly enrolled in the IDI coverage in 1999. (Michael Kelly IDI Application, Exhibit S)

31. On August 3, 2004, Kelly submitted a disability claim based upon chemical dependence (cocaine) and he later also claimed to be disabled because of depression. (Income Protection Claim, Exhibit T ; Claimant's Supplemental Statement dated June 6, 2007, Exhibit U).

32. Unum has paid $865,200 in benefits while Paul Revere has paid $362,670 in benefits to date. (Unum Screen Captures, Exhibit V)

33. Paul Revere continues to pay $7,500 monthly. (January 10, 2008 letter from Paul Revere to Mr. D. Beeks, Exhibit W at page 3)

34. To be eligible for disability benefits, the IDI policy requires Kelly to be under "the regular and personal care of a [p]hysician which, under prevailing medical standards, is appropriate for the condition causing the disability." (Duplicate IDI Policy, Exhibit X)

35. In 2007 the plaintiff only saw addictionologist Michael Sucher, M.D., once in February, once in May, once in September, once in November, and once in December.

(Exhibit W at 2)

36. Dr. Sucher would like to see Mr. Kelly receive inpatient or residential chemical dependency treatment. (*Id.*)

37. Kelly has refused to follow Dr. Sucher's advice. (*Id.*)

38. If Kelly complied with Dr. Sucher's treatment recommendation, Dr. Sucher predicts Kelly would have at least an 80% likelihood of fully recovering and returning to work. (*Id.*)

39. Kelly also has seen a psychiatrist, Dr. Laura Harrington. (Laura Harrington Medical Records dated March 21, 2007, Exhibit Y)

40. In 2007, Kelly saw Dr. Harrington in March, April, twice in May, and then not for the rest of the year. (Exhibit Y; Laura Harrington medical record dated April 26, 2007, Exhibit Z; Laura Harrington medical record dated May 17, 2007, Exhibit AA; Laura Harrington medical record dated May 31, 2007, Exhibit BB).

41. Kelly often showed up late or canceled visits with Dr. Harrington. (Exhibits Y-BB; Dr. Sucher Medical Records dated September 4, 2007, Exhibit CC)

42. Because he was not complying with the policy's appropriate care requirement, Paul Revere brought this declaratory judgment action. (Exhibit DD at 3; Complaint, dkt 1)

RESPECTFULLY SUBMITTED this 19th day of May, 2008.

LEWIS AND ROCA LLP

By s/Stefan M. Palys
   Stephen M. Bressler
   Stefan M. Palys
   Attorneys for Plaintiff The Paul Revere
   Insurance Company

1936227.1

**CERTIFICATE OF SERVICE**

    I certify that on May 19, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Daniel P. Beeks
Mohr, Hackett, Pederson, Blakley & Randolph, P.C.
2800 N. Central Avenue, Suite 1100
Phoenix, AZ  85004-1043
*Attorneys for Defendant*

                                                            Michelle Gallegos

1936227.1